UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| MELVIN JONES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No.: 1:23-cv-01026-JEH |
| ) | |
| ) | |
| WEXFORD HEALTH ) | |
| SOURCES, INC., *et al.*, ) | |
| ) | |
| Defendants. ) | |

**Order**

**I**

**A**

This cause is before the Court on Defendants' motions for summary judgment. During the relevant time, Plaintiff, Melvin Jones, was an inmate with the Illinois Department of Corrections (IDOC) who was incarcerated at the Pontiac Correctional Center (Pontiac). Plaintiff is currently being housed at the IDOC's Illinois River Correctional Center.

On January 25, 2023, Plaintiff filed this case under 42 U.S.C. § 1983 alleging a violation of his Constitutional rights. In his Amended Complaint, Plaintiff alleged that Defendants knowingly deprived him of his prescription medication for weeks. Plaintiff averred that he suffered adverse side-effects from not taking his medication for an extended period of time, and he further alleged that Defendants' actions in failing or refusing to re-fill his prescription medication violated his Constitutional rights.

1

On April 20, 2023, the Court granted Plaintiff's motion for leave to file an Amended Complaint. In granting Plaintiff's motion, the Court found that Plaintiff's Amended Complaint stated two claims: (1) a deliberate indifference claim in violation of Plaintiff's Eighth Amendment rights against the individually named Defendants and (2) a *Monell* claim against Defendant Wexford Health Sources, Inc. Defendants have now moved for summary judgment on Plaintiff's claims against them.

**B**

Local Rule 7.1(D)(2)(b)(6) provides that "[a] failure to respond to any numbered fact [contained within a motion for summary judgment] will be deemed an admission of the fact." *Id*. Although Plaintiff filed responses to Defendants' two motions for summary judgment, Plaintiff did not comply with the Court's Local Rule, in that, Plaintiff did not respond specifically to Defendants' asserted material facts, nor did he submit evidence demonstrating that Defendants' asserted facts were in dispute as required by Local Rule 7.1(D).

As a result, Plaintiff has admitted all of the relevant facts that show that Defendants are entitled to summary judgment, and the Court incorporates those facts herein. *Parra v. Neal*, 614 F.3d 635, 636 (7th Cir. 2010), *as revised* (July 19, 2010) (internal citations omitted) ("At summary judgment, the plaintiffs filed an opposition to the defendants' motion but did not bother to respond to their statement of material facts. The district court thus accepted the defendants' statement of material facts as true. We do as well.").

Despite Plaintiff's failure to respond properly, the Court is cognizant that "[s]ummary judgment cannot be granted by default even if there is a complete failure to respond to the motion." *Boyd v. Habeck*, 2013 WL 518966, * 1 (E.D. Wis. Feb. 12, 2013) (citing Fed. R. Civ. Pro. 56(e) advisory committee note to 2010 amendments). Accordingly, the Court has reviewed the evidence submitted by

Defendants in order to determine whether a genuine issue of material fact exists that would preclude summary judgment in Defendants' favor. The Court finds that no such disputed fact exists and that Defendants are entitled to judgment as a matter of law. *Abbot v. Gale*, 896 F.2d 323, 326 (8th Cir. 1990) (holding that where a defendant denies the allegations of the complaint and a plaintiff then fails "to respond with evidence in support of [her] claim," the court is justified in granting summary judgment). With that in mind, the undisputed facts demonstrate the following.

### C

Plaintiff was transferred from the IDOC's Menard Correctional Center to Pontiac in August 2021. Plaintiff was incarcerated at Pontiac in 2021, 2022, and 2023. When first he arrived at Pontiac, Plaintiff had been previously diagnosed as having hypertension for which he took prescription medication. Specifically, Plaintiff hydrochlorothiazide and Lopressor, also known as metoprolol tarts, to treat and to control his high blood pressure.

Also when Plaintiff arrived at Pontiac, Defendant Dr. Andrew Tilden was employed by Defendant Wexford Health Sources, Inc. (Wexford) as the medical director at Pontiac.[1] Defendant John Burle was the Warden at Pontiac. And, Defendant Robert Rivett was a counselor at Pontiac.

During the relevant time, the medical staff at Pontiac provided prescription medication to inmates in a blister pack. An inmate who was housed in general population at Pontiac was allowed to keep the blister pack in his cell. The blister

---

[1] Dr. Tilden passed away on February 19, 2023. On August 21, 2023, the Court substituted Pamela E. Hart, who is the Administrator of the Estate of Dr. Andrew Tilden, as the party Defendant in lieu of Dr. Tilden. However, for ease of reference, the Court will continue to refer to Dr. Tilden in this Order even though Pamela Hart has been substituted as the proper Defendant for Dr. Tilden pursuant to Federal Rule of Civil Procedure 25.

pack included a sticker with a refill date.² As that date approached, the inmate would provide the refill sticker to a nurse, and then, the inmate's medication would be refilled by a nurse who would provide another blister pack of medication to the inmate.

Pursuant to this policy and according to Plaintiff's deposition testimony, a nurse would deliver his blister packs of hydrochlorothiazide to his cell when the prescription was due for a refill. Prior to the time for a refill, Plaintiff would place the renewal sticker on a piece of paper, write his name, identification number, and cell number on the sticker. Thereafter, a nurse would take the sticker, and a nurse would deliver the refilled blister pack of prescription medication to him a day or two later. Plaintiff acknowledged during his deposition testimony that he was unaware of the process at Pontiac for refilling the prescriptions after he provided his renewal sticker to a nurse. Plaintiff further conceded that he did not know who specifically was responsible for ordering and maintaining the supply of prescription medications at Pontiac, and he did not know who was responsible for actually filling his prescription.

Plaintiff alleges that, on November 29, 2021, he gave his refill sticker for hydrochlorothiazide to a nurse at Pontiac whose name he does not know or does not remember. Plaintiff testified at his deposition that, when he submitted the renewal sticker on November 29, 2021, he had four pills left. Plaintiff claims that he did not receive a refill of hydrochlorothiazide until January 26, 2022.

---

² The process for an inmate who was being housed in the segregation unit at Pontiac was slightly different. If an inmate was being housed in segregation, the inmate would not be allowed to maintain his blister pack of medication in his cell. Instead, a nurse would summon the inmate each day out of his cell, and then, the nurse would provide the inmate's daily dosage of medication to him. The inmate would, then, return to his cell.

Plaintiff also testified at his deposition, that after he stopped taking hydrochlorothiazide, he suffered headaches, swollen ankles, fatigue and couldn't sleep due to the pain in his ankles. Plaintiff also speculated that he could have had a heart attack, that he could have suffered a stroke, or that he could have died as a result of not taking his prescription medication for several weeks.

Finally, Plaintiff claims that he complained to several individuals at Pontiac about his need for his medication, but no one took any actions to assist him. Specifically, Plaintiff states that he submitted a grievance regarding his lack of medication to Counselor Rivett, but Counselor Rivett denied his grievance. In addition, Plaintiff claims that he wrote five letters to Warden Burle and five letters to Dr. Tilden about the lack of access to his prescription medication, but neither responded to his letters. As for Warden Burle, Plaintiff claims that he was made aware of Plaintiff's need for and lack of access to his medication when Warden Burle denied the appeal of his grievance that Plaintiff had initially submitted to Counselor Rivett.

Accordingly, Plaintiff filed this lawsuit claiming that Dr. Tilden, Warden Burle, and Counselor Rivett violated his Eighth Amendment rights when they acted with deliberate indifference toward his serious medical needs (*i.e.*, his need for hydrochlorothiazide to manage and to treat his hypertension) when they refused to take action to ensure that he received his prescription medication on a consistent basis. Plaintiff claims that these Defendants failed to act, at least in part, because they we refollowing a policy instituted or maintained by Wexford of maintaining an insufficient supply of prescription medications at Pontiac in order to save costs.

5

## II

### A

Federal Rule of Civil Procedure 56(a) provides that summary judgment shall be granted if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Ruiz-Rivera v. Moyer*, 70 F.3d 498, 500-01 (7th Cir. 1995). The moving party has the burden of providing proper documentary evidence to show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Once the moving party has met its burden, the opposing party must come forward with specific evidence, not mere allegations or denials of the pleadings, which demonstrates that there is a genuine issue for trial. *Gracia v. Volvo Europa Truck, N.V.*, 112 F.3d 291, 294 (7th Cir. 1997). "[A] party moving for summary judgment can prevail just by showing that the other party has no evidence on an issue on which that party has the burden of proof." *Brazinski v. Amoco Petroleum Additives Co.*, 6 F.3d 1176, 1183 (7th Cir. 1993).

Accordingly, the non-movant cannot rest on the pleadings alone, but must designate specific facts in affidavits, depositions, answers to interrogatories or admissions that establish that there is a genuine triable issue; he must do more than simply show that there is some metaphysical doubt as to the material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 261 (Brennan, J., dissenting) (1986) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)); *Hot Wax, Inc. v. Turtle Wax, Inc.*, 191 F.3d 813, 818 (7th Cir. 1999). Finally, a scintilla of evidence in support of the non-movant's position is not sufficient to oppose successfully a summary judgment motion; "there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson*, 477 U.S. at 252.

B

Persons acting under the color of law violate the Constitution if they are deliberately indifferent to a prisoner's serious medical needs, serious mental health needs, or serious dental needs. *Arnett v. Webster*, 658 F.3d 742, 750 (7th Cir. 2011) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)); *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 828 (7th Cir. 2009) ("Deliberate indifference to serious medical needs of a prisoner constitutes the unnecessary and wanton infliction of pain forbidden by the Constitution.").

The deliberate indifference standard requires a plaintiff to clear a high threshold in order to maintain a Constitutional claim. *Dunigan ex rel. Nyman v. Winnebago County*, 165 F.3d 587, 590 (7th Cir. 1999). "In order to prevail on a deliberate indifference claim, a plaintiff must show (1) that his condition was 'objectively, sufficiently serious' and (2) that the . . . officials acted with a sufficiently culpable state of mind." *Lee v. Young*, 533 F.3d 505, 509 (7th Cir. 2008) (quoting *Greeno v. Daley*, 414 F.3d 645, 652 (7th Cir. 2005)); *Duckworth v. Ahmad*, 532 F.3d 675, 679 (7th Cir. 2008) (same).

"A medical condition is serious if it 'has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would perceive the need for a doctor's attention.'" *Lee*, 533 F.3d at 509 (quoting *Greeno*, 414 F.3d at 653). "With respect to the culpable state of mind, negligence or even gross negligence is not enough; the conduct must be reckless in the criminal sense." *Id.*; *Farmer v. Brennan*, 511 U.S. 825, 836-37 (1994) ("We hold . . . that a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of harm exists, and he must also draw the inference.").

"Deliberate indifference is not medical malpractice; the [Constitution] does not codify common law torts. And although deliberate means more than negligent, it is something less than purposeful. The point between these two poles lies where the official knows of and disregards an excessive risk to inmate health or safety or where the official is both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he . . . draws the inference." *Duckworth*, 532 F.3d at 679 (internal quotations and citations omitted). The United States Court of Appeals for the Seventh Circuit has cautioned, however, that a plaintiff "need not prove that the . . . officials intended, hoped for, or desired the harm that transpired. Nor does a [plaintiff] need to show that he was literally ignored. That the [plaintiff] received some treatment does not foreclose his deliberate indifference claim if the treatment received was so blatantly inappropriate as to evidence intentional mistreatment likely to seriously aggravate his condition." *Arnett*, 658 F.3d at 751 (internal citations and quotations omitted).

### III

### A

Defendants raise a host of reasons as to why they are entitled to summary judgment in this case, but for Dr. Tilden and Warden Burle, the Court need only focus on one argument asserted by them.[3] Dr. Tilden and Warden Burle are

---

[3] To the extent that Plaintiff's claim is that there was a delay in his medical treatment rather than a denial of medical treatment, Defendants are, nevertheless, entitled to summary judgment. The Seventh Circuit has held: "In cases where prison officials delayed rather than denied medical assistance to an inmate, courts have required the plaintiff to offer 'verifying medical evidence' that the delay (rather than the inmate's underlying condition) caused some degree of harm. That is, a plaintiff must offer medical evidence that tends to confirm or corroborate a claim that the delay was detrimental." *Williams v. Liefer*, 491 F.3d 710, 714-15 (7th Cir. 2007) (internal citations omitted); *Berry v. Peterman*, 604 F.3d 435, 441 (7th Cir. 2010) ("A significant delay in effective medical treatment also may support a claim

8

entitled to summary judgment because they lacked the personal involvement necessary to be held liable to Plaintiff under § 1983.

"[I]ndividual liability under § 1983 requires 'personal involvement in the alleged constitutional deprivation.'" *Minix v. Canarecci*, 597 F.3d 824, 833 (7th Cir. 2010) (quoting *Palmer v. Marion County*, 327 F.3d 588, 594 (7th Cir. 2003)). The United States Court of Appeals for the Seventh Circuit has explained that the doctrine of *respondeat superior* (a doctrine whereby a supervisor may be held liable for an employee's actions) has no application to § 1983 actions. *Gayton v. McCoy*, 593 F.3d 610, 622 (7th Cir. 2010).

Instead, in order for a supervisor to be held liable under § 1983 for the actions of his subordinates, the supervisor must "approve[] of the conduct and the basis for it." *Chavez v. Illinois State Police*, 251 F.3d 612, 651 (7th Cir. 2001); *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995) ("An official satisfies the personal responsibility requirement of section 1983 . . . if the conduct causing the constitutional deprivation occurs at [his] direction or with [his] knowledge and consent.") (internal quotation omitted). "[S]upervisors must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see. They must in other words act either knowingly or with deliberate, reckless indifference." *Backes v. Village of Peoria Heights, Illinois*, 662 F.3d 866, 870 (7th Cir. 2011) (quoting *Chavez*, 251 F.3d at 651)). "In short, some causal connection or affirmative link between the action complained about and the official sued is necessary for § 1983 recovery." *Gentry*, 65 F.3d at 561.

---

of deliberate indifference, especially where the result is prolonged and unnecessary pain."). Plaintiff has failed to offer any verifying medical evidence that would demonstrate or indicate that the delay in receiving his hydrochlorothiazide, as opposed to his hypertension itself, caused him to experience some degree of harm.

9

Here, Dr. Tilden and Warden Burle lacked the personal involvement necessary to be held liable to Plaintiff under § 1983. As for his claim against Dr. Tilden, Plaintiff admitted during his deposition that he never spoke with Dr. Tilden about not receiving his hydrochlorothiazide. In fact, Plaintiff conceded that Dr. Tilden never examined Plaintiff when he was incarcerated at Pontiac, Plaintiff could not definitively state whether Dr. Tilden knew that Plaintiff was taking the prescription medication hydrochlorothiazide, whether Dr. Tilden knew that he had run out of hydrochlorothiazide that was not being refilled, or that Dr. Tilden knew that Plaintiff had been diagnosed as having hypertension.

Although he claims that he wrote five letters to Dr. Tilden complaining that his medication was not being refilled, Plaintiff admits that he does not know if Dr. Tilden ever received any of his letters. Instead, Plaintiff testified that he sued Dr. Tilden because, as the medical director, Dr. Tilden was in charge and was required to know whether his subordinates were providing proper medical care and attention to the inmates at Pontiac, including to him.

As for his claim against Warden Burle, Plaintiff similarly conceded during his deposition that he does not know if Warden Burle ever received any of his letters. Plaintiff also testified that Warden Burle never provided any medical care to Plaintiff, that Warden Burle is not a medical doctor, that Warden Burle did not prescribe any medications for Plaintiff, and that Warden Burle was not the person responsible for writing the policy for prescribing medications at Pontiac. Plaintiff testified that he sued Warden Burle because he was the chief administrative officer at and was in charge of the inmates at Pontiac.

Based upon Plaintiff's admissions that he made during his deposition testimony, it is clear that Dr. Tilden and Warden Burle are entitled to the summary judgment that they seek. As explained *supra*, neither Dr. Tilden nor Warden Burle can be held liable simply based upon their supervisory positions at Pontiac.

Plaintiff conceded during his deposition that neither Dr. Tilden nor Warden Burle were directly involved in refilling his prescription medication. In fact, Plaintiff has admitted that he does not know whether either Dr. Tilden or Warden Burle was even aware of his medical condition, his need for prescription medication to treat and to manage his medical condition, and his lack of that medication. Accordingly, Dr. Tilden and Warden Burle's motions for summary judgment are granted.

B

Counselor Rivett is also entitled to summary judgment for similar reasons. Like Warden Burle, Counselor Rivett never provided any medical care to Plaintiff, and he never prescribed any medications for Plaintiff. Plaintiff sued Counselor Rivett because he responded to Plaintiff's January 26, 2021 grievance and wrongly denied it.

However, "[t]here is no constitutional right to a grievance process." *Jackson v. Neal*, 2023 WL 2401786, * 2 (N.D. Ind. Mar. 7, 2023); *Grieveson v. Anderson*, 538 F.3d 763, 770 (7th Cir. 2008) (noting that there is not a Fourteenth Amendment substantive due process right to an inmate grievance procedure). Moreover, an inmate or a prisoner, such as Plaintiff, has no right to have his grievance resolved in his favor or heard in any certain way. *Conyers v. Abitz*, 416 F.3d 580, 586 (7th Cir. 2005) (plaintiff's argument that conspiracy by prison officials to deny administrative review of his grievances by dismissing them was frivolous where plaintiff had access to the grievance procedure but he did not obtain the outcome he desired); *O'Quinn v. Feinerman*, 2011 WL 2670200, * 5 (S.D. Ill. July 7, 2011).

Furthermore, like Warden Bure, Counselor Rivett was not responsible for providing medical care or attention to Plaintiff. Hypertension or alleged headaches from hypertension is not a condition so blatantly obvious that a non-medical staff member would understand that medical attention was needed. *Ruiz v. Bautista*, 2024 WL 1104779, * 3 (7th Cir. Mar. 14, 2024). Therefore, Counselor

11

Rivett lacked the personal involvement necessary to be held liable to Plaintiff for (allegedly) violating his Eighth Amendment rights, and his motion for summary judgment is granted. *Minix*, 597 F.3d at 833.

## C

Finally, Wexford is entitled to summary judgment. Because the Court has found that Wexford's employee (*i.e.*, Dr. Tilden) is entitled to summary judgment, Wexford is also entitled to summary judgment. Unless a Wexford employee(s) can be said to have been guilty of violating Plaintiff's Constitutional rights, any alleged policy that Wexford's employee(s) was following cannot be said to have caused Plaintiff to suffer a Constitutional injury. *Ray v. Wexford Health Sources, Inc.*, 706 F.3d 864, 866 (7th Cir. 2013) (holding that it was unnecessary to determine what Wexford's policy was where the plaintiff failed to establish a Constitutional problem with his treatment and did not suffer an actionable injury from the policy attributed to Wexford). *Dismukes v. Baker*, 2015 WL 1208654, * 2 (C.D. Ill. Mar. 13, 2015).

In any event, Plaintiff has failed to identify any policy, practice, or procedure employed or followed by Wexford that violated his Constitutional rights. *Monell v. Department of Soc. Servs. of City of New York*, 436 U.S. 658 (1978). Accordingly, Wexford is entitled to summary judgment on Plaintiff's *Monell* claim against it.

**IT IS, THEREFORE, ORDERED:**

**1.     Defendants John Burle and Robert Rivett's motion for summary judgment [60] is GRANTED.**

**2.     Defendants Pamela E. Hart, as Administrator of the Estate of Dr. Andrew Tilden, and Wexford Health Sources, Inc.'s motion for summary judgment [68] is also GRANTED.**

3.      Accordingly, the Clerk of the Court is directed to enter judgment, with prejudice, in all Defendants' favor and against Plaintiff.

4.      All other pending motions are denied as moot, and this case is terminated. All deadlines and settings on the Court's calendar are vacated.

5.      If he wishes to appeal this judgment, Plaintiff must file a notice of appeal with this Court within thirty (30) days of the entry of judgment. Fed. R. App. P. 4(a)(4).

6.      If he wishes to proceed *in forma pauperis* on appeal, Plaintiff's motion for leave to appeal *in forma pauperis* must identify the issues that he will present on appeal to assist the Court in determining whether the appeal is taken in good faith. Fed. R. App. P. 24(a)(1)(c); *Celske v. Edwards*, 164 F.3d 396, 398 (7th Cir. 1999) (an appellant should be given an opportunity to submit a statement of his grounds for appealing so that the district judge "can make a responsible assessment of the issue of good faith."); *Walker v. O'Brien*, 216 F.3d 626, 632 (7th Cir. 2000) (providing that a good faith appeal is an appeal that "a reasonable person could suppose . . . has some merit" from a legal perspective).

7.      If he chooses to appeal, Plaintiff will be liable for the $605.00 appellate filing fee regardless of the outcome of the appeal.

*It is so ordered.*

Entered: August 14, 2025

s/Jonathan E. Hawley

U.S. District Judge